IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD P.,[1]

      Plaintiff,

v.

LELAND DUDEK,
Acting Commissioner of Social Security,

      Defendant.

Civ. No. 24-870 SCY

## MEMORANDUM OPINION AND ORDER

Plaintiff argues that the Commissioner committed error when denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") improperly terminated the disability process at step two when the ALJ discounted a consulting physician's opinion that Plaintiff's mental impairments affected one or more of his work-related abilities. The Court agrees that Plaintiff satisfied his "de minimis" burden at this step of the disability analysis and the ALJ should have proceeded to the next step. As a result, the Court GRANTS Plaintiff's Motion to Remand, Doc. 11, and reverses and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 7, 8, 9. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>   most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)   If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

>   B.   Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

The ALJ concluded that Plaintiff's medically determinable impairments were nonsevere and terminated the disability analysis at step two. The Tenth Circuit has held that that Plaintiff's burden at this step is "de minimis." Plaintiff argues he presented more than minimal evidence that his impairments impacted his ability to perform basic work activities, while the Commissioner argues that the ALJ's decision is supported by substantial evidence. Because the Court finds that neither the ALJ nor the Commissioner on appeal apply the correct standard of law—whether Plaintiff has satisfied this "de minimis" burden—the Court finds that the ALJ did not apply the proper legal standard and reverses for the ALJ to proceed past step two on remand.

**I.    Background**

At step two, the ALJ found that Plaintiff has medically determinable impairments of Hodgkin's Lymphoma in full remission, anxiety, and depression. AR 23.

With respect to the limitations resulting from these impairments, Plaintiff testified that he cannot consistently obtain chemotherapy treatments for his lymphoma because he is homeless. AR 52-53. He cannot work due to fatigue. AR 54. He described his brain fog as something that is "really hard to battle through." AR 55. In his function report, he reported that he cannot work for more than short periods or consistently remember simple instructions or daily tasks. AR 406. His impairments affect his abilities to remember, complete tasks, concentrate, understand, follow instructions, and get along with others. AR 410. His brain was always cluttered and foggy and he could only pay attention for a few minutes at a time. *Id*. He does not handle stress or changes in routine well. AR 411. He does not remember what he is doing and is often confused. *Id*.

With respect to the medical evidence related to mental impairments, the ALJ found that "the claimant has no history of treatment for any mental health impairment. He has not seen a psychologist or psychiatrist and is not prescribed any psychotropic medication." AR 26. After

Plaintiff filed his application for benefits, state agency consulting psychologist Marc A. Caplan, Ph.D., examined the claimant on August 30, 2022 and diagnosed major depressive disorder, generalized anxiety disorder, and ruled out post-traumatic stress disorder. AR 26. On mental status examination, Plaintiff's mood was flat and his affect was congruent, but other findings were normal. AR 26-27. On the Mini-Mental Status Exam, Plaintiff obtained a score of 28 out of 30, in the normal range of intelligence. AR 27.

Dr. Caplan opined Plaintiff might have difficulty interacting professionally due to his significant pain, chronic fatigue, diminishing strength, and other physical health symptoms related to his Hodgkin's Lymphoma diagnosis (e.g., nausea). AR 27. Plaintiff appeared to follow instructions the first time they were given. Still, his physical and mental symptoms might impede his ability to perform tasks well in a public environment (for example, as a cashier or landscaping), which might preclude him from certain forms of work. AR 27. Plaintiff might also benefit from a social worker who could help him maintain appointments, ensure he had reliable transportation to his appointments, and help him find a stable job that would be sensitive and flexible to his medical needs. AR 27.

The ALJ found that Dr. Caplan's opinion was "partially persuasive." AR 27. The ALJ explained:

> Dr. Caplan indicated that his opinion was based in part on claimant's subjective complaints of physical pain, but he is a psychologist and did not perform a physical examination. Thus, his opinion of limitations based on physical conditions is not supported. Moreover, his opinion as to limitation in interacting with the public is not supported by his mostly normal clinical findings, including appropriate eye contact. Furthermore, his opinion as to mental limitation is not consistent with the lack of any mental health treatment, either in the form of counseling or psychotropic medication.

AR 27 (citation omitted).

Finally, the ALJ noted that state agency psychological nonexamining consultant Phaedra Caruso-Radin, Psy.D., found that the claimant had no severe mental impairment. AR 28. The ALJ found that "Dr. Caruso-Randin's administrative finding is persuasive." AR 28.

The ALJ concluded that "the claimant does not have an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities is consistent with the objective medical evidence and other evidence." AR 28. The ALJ proceeded to evaluate the "paragraph B" criteria in the four areas of mental functioning and discounted Plaintiff's subjective allegations for the reasons that:

- The claimant has a GED and performed skilled work at the substantial gainful activity level in the past, and there is no evidence of a decline in cognitive functioning;

- Medical providers have not observed problems with memory or cognitive functioning;

- The claimant scored 28 out of 30 on the Mini-Mental Status Exam, in the normal range of intelligence;

- The claimant engages in activities including trying to earn money performing odd jobs and picking up his child from school and going to a park with her three days a week;

- Medical providers did not report deficiencies in eye contact, speech, or conversation;

- Medical providers have not noted that the claimant is slow or distractible; and

- The claimant did not testify as to any difficulty in personal care, and medical providers did not note any deficiency in hygiene or grooming.

AR 28.

## II.    DISCUSSION

"At step two, it is the claimant's burden to demonstrate an impairment, or a combination of impairments, that significantly limit her ability to do basic work activities." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (2004). The Tenth Circuit has instructed that this is a

7

"nondemanding standard," *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), which requires only a "de minimis" showing from the claimant:

> The Supreme Court has adopted what is referred to as a "de minimus" standard with regard to the step two severity standard: "only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking" the subsequent steps of the sequential evaluation process. *Bowen v. Yuckert,* 482 U.S. 137, 158 (1987) (O'Connor, J., concurring) . . . .

*Langley v. Barnhart*, 373 F.3d 1116, 1123 (2004) (alterations omitted and citation amended). Justice O'Connor's concurring opinion in *Yucker*, cited with approval by the Tenth Circuit, further explained that step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Yuckert*, 482 U.S. at 156 (O'Connor, J., concurring).

As the Ninth Circuit has echoed, the inquiry at step two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Given this purpose, "case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676-77 (10th Cir. 2004). Indeed, the agency has likewise agreed that step two is designed to screen out only those claimants with "impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2. The agency therefore stated that the medical evidence must "clearly establish[]" that the impairment is not severe in order to terminate the analysis at step two. *Id.*

The Commissioner on appeal contends that "substantial evidence supports the ALJ's finding that Plaintiff failed to show his impairments significantly limited his physical or mental ability to do basic work activities." Doc. 17 at 10. The Court disagrees that this is the proper standard of review. SSR 85-28 and the case law instead require the Court to "determine whether the ALJ had substantial evidence *to find that the medical evidence clearly established* that [the

claimant] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (emphasis added). In other words, the Court asks whether the ALJ properly applied the "de minimis" standard when evaluating Plaintiff's evidence of limitations.

Here, the ALJ did not apply a "de minimis" standard. The ALJ acknowledged that some evidence, including Plaintiff's testimony and the opinion of a state-agency examining consultant, establishes that Plaintiff is limited in some mental work-related abilities. But the ALJ weighed this evidence against Plaintiff's lack of treatment for mental health symptoms, Plaintiff's activities of daily living, and the opinion of one state agency nonexamining consultant. In other words, the ALJ did not ask whether Plaintiff had presented "de minimis" evidence of limitations, but instead found that the contrary evidence outweighed Plaintiff's evidence. This is simply not the correct question to ask at step two. The question is whether the medical evidence "clearly establishe[s]" the lack of limitations. SSR 85-28, 1985 WL 56856, at *3. In the course of weighing the evidence and giving reasons to discount the evidence establishing limitations, the ALJ implicitly acknowledged that the evidence is not clear. *Cf. Brand v. Berryhill*, No. 17cv1203 WJ-LF, 2019 WL 1055628, at *6 (D.N.M. Mar. 6, 2019) (denial at step two is inappropriate where the medical evidence is equivocal, and collecting cases), *report and recommendation adopted*, 2019 WL 1370100 (D.N.M. Mar. 26, 2019).

Even if some weighing of the evidence may be necessary as a practical matter at this step, the ALJ's reasons are not consistent with the application of a de minimis standard. For example, the ALJ favored a nonexamining agency consultant over an examining consultant who saw Plaintiff and performed an evaluation in person. *Cf.* 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v) ("Examining relationship. A medical source may have a better understanding

9

of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."). The ALJ relied on very minimal activities of daily living—Plaintiff trying to look for sporadic work and playing at the park with his child a few times a week. *Cf. Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (minimal or sporadic performance of activities of daily living are generally insufficient to support rejection of Plaintiff's subjective symptom evidence). The ALJ also invoked Plaintiff's lack of treatment, but lack of treatment does not indicate whether an impairment is severe or not. *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations.").

 Moreover, there are indications that the agency started from a position of having insufficient evidence to make a determination of disability. AR 27 (on initial review, state agency psychological consultant Mark C. McGaughey, Ph.D. found insufficient evidence to assess mental condition); AR 26 (acknowledging that the agency referred Plaintiff to Dr. Caplan in light of his mental health allegations and the lack of medical evidence because Plaintiff had never received treatment for mental health symptoms). The ALJ received further evidence on the topic from Dr. Caplan, but then decided to discount it. That is, the Commissioner sought evidence from Dr. Caplan because it determined that, given Plaintiff's lack of past treatment, it needed more evidence to make an assessment. When Dr. Caplan provided additional evidence, however, the ALJ discounted it and then relied on the lack of evidence in Plaintiff's past

treatment to find that Plaintiff's evidence of an impairment failed to survive step two. This course does not form a logical path to a finding that the medical evidence "clearly establishes" a lack of work-related limitations.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand (Doc. 11) is **GRANTED**. This matter is remanded to the agency for further proceedings in accordance with this opinion.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**